JOHN NELSON et al *v.* JOHN S. CLAYBROOKE.

1. ESTOPPEL.  The maker of a deed absolute in form, who testifies in a case to which he is no party, that he has no interest whatever in the land conveyed by the deed, is estopped from afterwards asserting that the deed was in fact a trust, and not an absolute conveyance.

2. SAME.  His heir is also estopped.

3. CHANCERY PRACTICE.  *Verdict of a jury.  Immaterial issues.* The verdict of a jury upon immaterial issues may be set aside by the Court and a decree pronounced as if no trial by a jury had been had.

4. SAME.  *Same.  Same.*  A defense—estoppel for example—which, if established, will be determinative of a cause is such a material issue that unless it be submitted, all other issues are *immaterial;* and if such pivotal defense be established, the verdict upon other issues submitted may be set aside, and a decree pronounced for the defendant.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

ESTES & ELLETT, GEO. GANTT, and H. E. JACKSON for Complainant.

T. B. TURLEY for Defendant.

TURNEY, J., delivered the opinion of the Court.

By their original bill complainants seek to have a trust declared in their favor upon certain real estate in the City of Memphis, which was con-

veyed in September, 1842, by Marcus B. Winchester, ancestor of complainants, to John S. Claybrooke, by deed absolute on its face.

The alleged ground for ¦the relief sought is, that the p⸱⸱ pose of making the conveyance was, to have Claybrooke apply the property or the proceeds of its sale, to the payment of the debts owing ¹·y Winchester, and that Claybrooke accepted it upon that trust; that the trust has been performed, with the property in suit left over, and that to it Claybrooke holds the legal title as trustee for complainants.

Claybrooke answers upon oath; denies the allelegations, and sets up the purchase as absolute in form and fact; that he purchased the property for the consideration of $28,000.00.

He also relies upon a deposition given by Winchester in 1851, in a case of Mayor and Aldermen of South Memphis *v.* Howard and Kent, as creating an estoppel on complainants, averring that ¹·hat deposition shows that Winchester swore that the conveyance was made to Claybrooke without any reservation or trust.

An amended and supplemental bill was filed, charging that if the conveyance was not upon the trust alleged in the original bill, it was procured by means of undue influence exercised over Winchester by Claybrooke.

The answer denies the allegations.

On the trial of the cause, complainants demanded a jury and submitted the following issues:

Nelson *v.* Claybrooke.

"1. Were or were not the conveyances made by M. B. Winchester to defendant for the purpose of having the property or its proceeds appropriated and applied by the defendant, to the payment of his (Winchester's) debts; and were the same accepted by the defendant for this object or on this trust?"

"2. Were or were not said conveyances made or intended as mortgages to protect and reimburse the defendant for all sums he might pay or assume for Winchester? or was the same an absolute sale of the property therein described from Winchester to defendant?"

"3. Were the conveyances obtained from Winchester by Claybrooke by undue influence, artifice or fraud, or did the defendant, by reason of confidential or professional relations with Winchester, secure for himself an undue bargain and advantage in obtaining said deeds?"

The jury responded: "We find the conveyance was made by M. B. Winchester to the defendant for the purpose of paying Winchester's debts, and was so accepted by defendant."

"We find said conveyance was an absolute conveyance."

"We find said conveyance was obtained from Winchester by Claybrooke on account of his embarrassed condition, and by reason of the confidential relations existing between them."

Nelson *v.* Claybrooke.

The Court set aside the verdict and gave a decree for defendant, dismissing the bill.

It is argued by defendant, that in view of the defense of estoppel set up by the answer, the issues tendered and passed upon by the jury were immaterial, it being maintained that the question of estoppel was the primary and leading one, and must of necessity be determined betore any others made by the pleadings can arise for investigation.

It is insisted by complainants that the question of estoppel does not arise, because Claybrooke was not a party to the suit of Mayor and Aldermen *v.* Howard and Kent, and had no legal interest either in the property involved in the litigation or in the decision of the Court; that the property involved in that suit was not embraced in the Winchester conveyance to Claybrooke. On the other hand, it is urged that Claybrooke did have an interest in the questions involved.

During the pendency of that suit, persons in interest were incompetent witnesses on the side of their interest.

With a view of testing his interest, the matters of fact just mentioned were inquired of from Winchester, and we think his answers show them affirmatively.

The parties introducing him were sufficiently impressed with the same belief to have Claybrooke execute to Winchester a release to any and all liability because of his warranty of title.

At all events the questions are made by the

record with sufficient prominence and distinctness to have demanded action upon them, upon a proper issue submitted to the jury under a correct charge from the Court as to what would constitute an estoppel; until this was done other issues were immaterial.

But aside from this, and even admitting the issues to have been material, still we are of opinion the verdict of the jury is a nullity.

The findings that the conveyance was made and accepted for the purpose of paying Winchester's debts; that it was absolute, and that it was obtained on account of the embarrassed condition of Winchester, and by reason of the confidential relations existing between the parties, in no way reflects upon the integrity, motive, honesty or capacity of either of the contracting parties. Nothing is more natural than that an honest man will be willing to sell his property to pay his debts; that he should do so absolutely, and in doing so select as a vendee one between whom and himself confidential and friendly relations exist. There is nothing in the verdict out of which can be construed the finding of the presence of fraud, artifice or undue influence in the transaction of conveyance and acceptance between Winchester and Claybrooke.

The Chancellor did right to set the verdict aside.

The next inquiry is, was there an estoppel? To the objections taken here that the entire record in *Mayor and Aldermen* v. *Howard & Kent* is

not presented, and, therefore, the question cannot be made upon the deposition, we say, it comes too late, having made no objection in the Chancery Court, but electing to pass upon it there you are committed, and will not be heard to complain of the absence of the other portions of that record. Besides, it is sufficiently pleaded to have entitled complainants to the use of the entire record if they had desired it.

In that deposition, Winchester, under the obligations of his oath, says, that he did, in 1842, convey the property to Claybrooke for a valuable consideration; that no reservations whatever were made except those expressed on the face of the deed; that the sale was absolute, and he is not aware of any reservation upon the face of the deed for his benefit; that the land in controversy is embraced in his deed to Claybrooke, who, with others, is interested in the suit.

He shows himself to be a very sensible and well-informed man. Is cautious and guarded in the use of language employed to convey his meaning. There is nothing in this very long deposition, written in the most part by Winchester himself, showing inadvertence, ignorance or mistake; on the contrary, it discovers care, thought and prudence, as well as a thorough knowledge of the facts deposed to. That Winchester understood what he was doing, and meant what he said, there can be no doubt, and those claiming under him are

estopped to deny it. They must submit to the title remaining where he placed it.

Even though Winchester may have been mistaken in his belief that the deed of 1842 to Claybrooke embraced the land in controversy in the suit in which his deposition was given, still the question was the same, and he and Claybrooke were as much interested in its settlement, as if it had been made upon the deed of 1842. Being so intended, and both believing the property claimed by Claybrooke was involved, Winchester made his solemn disclaimer under oath in the beforementioned deposition, in a judicial proceeding: 2 Head, 604.

As said in *Hamilton* v. *Zimmerman,* 5 Sneed, 39: "No explanation is given of the admission, either in the bill or proof, and it is in vain to attempt to evade its force by saying that the statement was an immaterial matter in the former suit, and therefore not likely to have challenged attention," etc.

Here the statements were the direct results of direct inquiry, and of matter believed by all, and especially by the witness, to be of importance in the cause and material to the issue.

Upon the questions of trust and of fraud and undue influence, it is sufficient to remark that much testimony has been introduced, consisting mainly of a letter correspondence between Winchester and Claybrooke. It is apparent, however, that but a small portion of the correspondence actually had has been brought into the record, doubt-

lessly because of its loss and destruction. From that we have, we find extracts tending to show a purpose to delay creditors, and some with a tendency to the creation of a trust for the payment of debts, but when we consider this correspondence connectedly, and as a whole, we think the decided weight of its meaning is a recognition by both of an absolute sale by Winchester to Claybrooke. In addition, Winchester, who lived for many years after it, never denied to Claybrooke that the sale was absolute and unconditional; instead he represents himself as Claybrooke's agent in the superintendency of the property.

The widow of Winchester, for several years after his death, recognized the title of Claybrooke, and after her death, his children, who had access to his papers and every opportunity to inform themselves as to the status of his title, delayed for several years before setting up any claim or bringing suit.

Upon the whole case, laying aside the question of estoppel, we are of opinion complainants have failed to make a case by that measure of evidence demanded by law.

Affirmed.

The account for rents, etc., will commence with the filing of the cross-bill. No account for antecedent rents, etc.